JOHN F. L. HEBB (CA SBN 108391)
LAW OFFICES OF JOHN F. L. HEBB
Santa Monica, California
Mail: P.O. BOX 555
TOPANGA, CA  90290-0555
TEL:  310/455-0070, FAX:  310/496-0456
*JOHNFLHEBB@aol.com*
*Pro Hac Vice motion pending*

Attorneys for Respondent
[Plaintiff in Arbitration]
PAC PACIFIC GROUP INT'L,
INC.  ("PPGI")

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **NGC NETWORK ASIA, LLC ["NGCA"],**<br><br>　　　　　**Petitioner,**<br><br>vs.<br><br>**PAC PACIFIC GROUP INT'L, INC. OF USA ["PPGI"],**<br><br>　　　　　**Respondent.**<br>========================<br>**AMERICAN ARBITRATION ASSOCIATION**<br><br>*ARBITRATION IN THE MATTER OF*:<br><br>**PAC PACIFIC GROUP INT'L, INC. ["PPGI"],**<br>　　　　　**Plaintiff**<br>vs.<br>**NGC NETWORK ASIA, LLC ["NGCA"],**<br>　　　　　**Defendant** | **SDNY No. 09 CIV 8684**<br>**[CACD No. CV 07878 (GHK)]**<br>[Amer. Arb'n Assn.  No. 50 181 T 00079 07]<br><br><br>**PPGI'S MOTION TO TRANSFER, STAY OR DISMISS NGCA'S PETITION TO CONFIRM ARBITRATION AWARD**<br><br>[FRCP 12(b)(3); 28 USC 1404(a); FRCP 12(b)(1),(2); 9 USC Secs. 10, 12; inter alia] |

```
PPGI'S MT. TO TRANSFER, STAY OR DISMISS NGCA'S PETITION TO CONFIRM ARB. AWARD [FRCP 12(b)(3)]
1
```

## **Relief Sought**

1. PPGI asks pursuant to FRCP 12(b)(3) and/or 28 USC 1404(a) that NGCA's petition in this Court to confirm the arbitration award in question be transferred to the U.S. District Court for Central California so that it may be consolidated with PPGI's pending petition to vacate that arbitration award [CACD No. CV 07878 (GHK)]*, or that NGCA's petition to confirm be stayed pending final resolution of PPGI's pending petition to vacate that arbitration award.

> \* In CACD No. CV 07878 (GHK), there is also pending PPGI's request for an order staying any enforcement proceedings on the award until final resolution of PPGI's petition in that Court to vacate the arbitration award.

2. As indicated below, NGCA's present petition in the Southern District of New York should be dismissed or transferred for improper venue, or transferred in the interests of justice for inconvenient forum, and, independently, dismissed for lack of subject matter jurisdiction and for lack of personal jurisdiction.

3. Rather than having NGCA's petition dismissed for any of this motion's bases, PPGI asks simply that the Court first consider the bases for transfer or stay, in view of the fact that (1) venue is proper in the U.S. District Court for Central California for PPGI's pending motion to vacate, and
(2) a ruling on whether the arbitration award is to be vacated must necessarily precede any confirmation.

4. Further, as PPGI would have no basis for contesting confirmation if its motion to vacate were to be finally denied, PPGI hereby agrees it would stipulate to confirmation in such event. Thus, at the very least, the present matter should be stayed if it is for any reason not transferred, because, in the interests of judicial economy and the parties avoiding needless litigation, PPGI would, on the

PPGI'S MT. TO TRANSFER, STAY OR DISMISS NGCA'S PETITION TO CONFIRM ARB. AWARD [FRCP 12(b)(3)]
2

lifting of any stay after any final denial of its motion to vacate, not thereafter on any basis contest confirmation.

5.  It is also noted that for any subsequent judgment collection purposes PPGI is a California corporation, with its principal place of business in California, and doing no business in New York, and so establishing a judgment in California would need be accomplished in California in any event.

### Parties

6.  PAC PACIFIC GROUP INT'L, INC.  ["PPGI"], is a California corporation, doing business in California and China.

7.  NGC NETWORK ASIA, LLC ["NGCA"], is a Delaware corporation, with its principal place of business in Hong Kong, China, and in Washington, DC.

### Lack of Subject Matter Jurisdiction [FRCP 12(b)(1)]

8. NGCA's petition to confirm does not cite any basis for this Court's subject matter jurisdiction, and this Court therefore under FRCP 12(b)(1) lacks such jurisdiction on the basis of NGCA's pleading.  Its Civil Cover Sheet [attached, for ease of reference] does cite federal question jurisdiction, but this is incorrect.  The arbitration was subject to the Federal Arbitration Act ["FAA"].

However, the law has long been clear that the FAA does not grant federal question subject matter jurisdiction.  As the Supreme Court has explained: "The [FAA] is something of an anomaly in the

**PPGI'S MT. TO TRANSFER, STAY OR DISMISS NGCA'S PETITION TO CONFIRM ARB. AWARD [FRCP 12(b)(3)]**
3

field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction." <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u> (1983) 460 U.S. 1, 25 n.32

### Lack of Personal Jurisdiction [FRCP 12(b)(2)]

9.  This Court lacks personal jurisdiction as well under FRCP 12(b)(2), as PPGI is a California corporation, with its principal place of business in California, and doing no business in New York. Declaration of John F.L. Hebb, Esq.  Declaration of John F.L. Hebb, Esq.; and reference the Declaration of Matthew Solum, Esq. in NGCA's petition to confirm, and that Declaration's Exhibits A, C, D, E, and F (particularly paragraphs 2 and 3 thereof).

### Transfer or Dismissal For Improper Venue [FRCP 12(b)(3)]

10.  Venue is improper in New York because, even under the FAA, venue must be established under the federal general venue statute, 28 USC 1391(a).  That venue requirement is not met because neither NGCA *(a Delaware corporation with its principal place of business in Hong Kong, China and in Washington, DC)* nor PPGI is a resident of New York, and because the underlying contract at issue was not to be performed there, and no claim arose there.  Declaration of John F.L. Hebb, Esq.; and reference the Declaration of Matthew Solum, Esq. in NGCA's petition to confirm, and that Declaration's Exhibits A, C, D, E, and F (particularly paragraphs 2 and 3 thereof).

11.  By contrast, under the federal general venue statute, 28 USC 1391(a), venue is proper in

California because PPGI is a resident of the Central District of California, and because the underlying contract at issue was to be performed there, and the claim arose there. And, under 9 USC 10(a)'s venue provision, venue in California is independently proper because the award was expressly "made" in Los Angeles, CA.**

12.  Therefore the matter should be transferred or dismissed under FRCP 12(b)(3), and as indicated above, PPGI requests transfer to the U.S. District Court for Central California so that it may be consolidated with PPGI's pending petition to vacate that arbitration award [CACD No. CV 07878 (GHK)].

### Transfer For More Convenient Forum [28 USC 1404(a)]

13.  Aside from improper venue in New York under the federal general venue statute, 28 USC 1391(a), transfer to the California District Court would be to a more convenient forum under 28 USC 1404(a):

(1)  Plaintiff is a resident of that district (and its counsel is located in that district, which is a financial consideration to plaintiff); no party is a resident of New York.

(2)  The arbitrator is a resident of California and does business there, and heard the great preponderance of the multiple hearings there, and has all his files and records there.  See Declaration of John F.L. Hebb, Esq., and representative arbitrator correspondence attached thereto.

PPGI's motion to vacate in the California court seeks leave of that court to conduct discovery of the arbitrator and the arbitrator's firm's direct and indirect clients and relationships for purposes

PPGI'S MT. TO TRANSFER, STAY OR DISMISS NGCA'S PETITION TO CONFIRM ARB. AWARD [FRCP 12(b)(3)]
5

of demonstrating failure to fully disclose.

> PPGI's petition to vacate in that court recites:
>
> Upon the parties' initial selection through this process and thereafter, the selected arbitrator, attorney Robert O'Brien, was notified by AAA of his selection and informed of the identity of the parties, instructed to perform a conflict check and other investigation, and to disclose to the parties any conflict of interest, "direct or indirect relationship with the case participants" or "any matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed arbitrator would be able to be impartial".
>
> See also:
> **History of Arbitration and PPGI's Pending Motion to Vacate** section below for relevant further description of the basis for PPGI's motion to vacate this arbitrator's award for evident partiality and otherwise.

California, then, for discovery purposes, is clearly the more convenient forum.

(3)  PPGI's petition to vacate in the California court further recites the corpus of supporting papers, exhibits and transcripts of proceedings that are to be submitted or lodged with that court, in addition to the files and records of the California arbitrator and the proceeds of subsequent deposition and other discovery process in California, prior to the hearing on the petition to vacate in the California court.  (This Court may take judicial notice of the obvious reality that a petition to vacate involves far more documentation than a petition to confirm, the latter only requiring the most minimal submission, and that a petition to vacate may require post-arbitration discovery.)

14.  Thus, again, California is clearly the more convenient forum – leaving aside improper venue in New York under the federal general venue statute, 28 USC 1391(a), and FRCP 12(b)(3).

15.  Therefore, regardless of the above FRCP 12(b)(3) transfer requested above, the matter would be transferred under 28 USC 1404(a) to the U.S. District Court for Central California as the more convenient forum, and the availability of coordination or consolidation with PPGI's pending petition to vacate the arbitration award [CACD No. CV 07878 (GHK)].

**PPGI'S MT. TO TRANSFER, STAY OR DISMISS NGCA'S PETITION TO CONFIRM ARB. AWARD [FRCP 12(b)(3)]**
6

**History of Arbitration and PPGI's Pending Motion to Vacate**

16. Defendant contracted with plaintiff and the Chinese government agency CCTV to obtain advertising for terrestrial television programming using China, but defendant made no good faith or other effort to obtain that advertising.

<u>Instead</u>, NGCA used the nationwide advertising time PPGI had acquired from CCTV to advertise *itself and National Geographic Society and the National Geographic brand generally* on terrestrial television as a springboard to the *cable* broadcasting NGCA and its parent National Geographic entities had sought unsuccessfully for more than a decade to introduce into China in the face of Chinese government persistent refusal to allow such.

Thus, because PPGI's contractual rights were a share of the advertising revenues, PPGI has been damaged in the amount of the fair value of the revenues that could have been obtained for the time NGCA used, measured by the published CCTV government rates for like days, times, channels, and show contents.

The evidence also showed defendant entered into the contract with no intent to obtain the advertising, but instead to utilize the advertising time solely for its own purposes as just described, and so was also alleged liable for fraudulent inducement. (In one year of its extensive broadcasting and its self-advertising, <u>NGCA sold not one penny of advertising</u>; and, just before the end of that first year of nationwide broadcasting and self-advertising, it used its purported "inability" to sell advertising to exercise a contractual right to exit the contract and its second-year automatic renewal obligation. It immediately thereafter began nationwide *cable* broadcasting to

**PPGI'S MT. TO TRANSFER, STAY OR DISMISS NGCA'S PETITION TO CONFIRM ARB. AWARD [FRCP 12(b)(3)]**
7

its now-established nationwide customer-viewer base, and publicized its having obtained major advertising sponsorship for its cable venture.  NGCA had no documentation of any efforts to sell advertising to any third parties.)

17. Notice of intent to arbitrate was given 10/4/03 pursuant to the parties' contractual agreement, namely the Memorandum of Understanding ["MOU"] entered into 10/28/00.

18. The MOU called for binding arbitration before a single neutral arbitrator.

19. After notice of intent to arbitrate, PPGI for several years proposed potential arbitrators and arbitral entities and arrangements to NGCA, but without any cooperation from NGCA.   PPGI thereafter in 2007 initiated a proceeding with the American Arbitration Association by filing a formal Notice of Claim at the AAA office in Los Angeles, CA .

20. NGCA then unsuccessfully opposed arbitration by a state court action it initiated in New York, and then in federal court after PPGI removed that state court action to federal court.

21. Simultaneously with its attempt to stay and dismiss the arbitration, NGCA filed an answer with the AAA.  After the federal court's denial of NGCA's action attempting to stop arbitration, NGCA thereafter participated in the AAA proceeding here at issue.

22. AAA, pursuant to its procedures, proposed a roster of up to 20 potential arbitrators, listing their basic qualifications and a general summary of their background and experience; the selection process thereafter involved the parties eliminating any arbitrators they chose to eliminate, and

**PPGI'S MT. TO TRANSFER, STAY OR DISMISS NGCA'S PETITION TO CONFIRM ARB. AWARD [FRCP 12(b)(3)]**
8

ranking the remaining in order of preference.

Notably for this case, AAA does not (and did not in this case) inform the potential arbitrators of the identity of the parties unless and until a specific arbitrator is selected through the parties' ranking process – so no "conflict check" or any other disclosure was done by the prospective arbitrators in advance of an actual selection of one of them.

Upon the parties' initial selection through this process and thereafter, the selected arbitrator, attorney Robert O'Brien, was notified by AAA of his selection and informed of the identity of the parties, instructed to perform a conflict check and other investigation, and to disclose to the parties any conflict of interest, "direct or indirect relationship with the case participants" or "any matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed arbitrator would be able to be impartial".

23. Via documentation sent by AAA on 6/24/08, the arbitrator disclosed his law firm, of which he is a managing partner, had a prior and on-going relationship with the parent company of the very defendant in the arbitration, but opined such was no problem.

Further, the arbitrator did not disclose that his firm's client was a 25% owner of the very defendant in the subject arbitration.

Nor did the arbitrator subsequently disclose that, at some point during the arbitration proceeding thereafter, his firm's client's ownership interest in the very defendant in the subject arbitration increased to a 50% ownership interest.

**PPGI'S MT. TO TRANSFER, STAY OR DISMISS NGCA'S PETITION TO CONFIRM ARB. AWARD [FRCP 12(b)(3)]**
9

24. PPGI, upon receiving information of the arbitrator's firm's past and continuing legal representation the 25% parent company of the defendant, with whom it shares the same international logo, publicity and reputation, and prestige, immediately objected to the arbitrator serving – and therefore objected before the arbitrator had performed any service or had even been confirmed.

Counsel for defendant, instead of honoring PPGI's objection to the defendant-affiliated arbitrator, opposed PPGI's objection and insisted that the arbitrator be confirmed.  In the process of opposing the objection, it was *NGCA's counsel* that disclosed what the prospective arbitrator had not, namely the disclosure that his firm's client was at that time, and for years previously had been, a continuing 25% owner of the very defendant in the subject arbitration.  As indicated, PPGI immediately objected all the more strongly to AAA on the basis of this additional information and the apparent even more clear conflict of interest, while AAA was pursuant to its rules still considering PPGI's initial objection.

25. Despite the foregoing appearance of arbitrator conflict and inability to be fully impartial, AAA summarily, that is without any dialogue or statement of reasons or other explanation, "affirmed" the prospective arbitrator. PPGI asked for a statement of reasons or the equivalent so it could address or understand the matter, but such was refused.

26. PPGI asked the objection be taken to a higher supervisory level within the AAA; AAA indicated it would do so; AAA then announced it again affirmed the prospective arbitrator.  PPGI

again asked for a statement of reasons or the equivalent so it could address or understand the matter, but such was refused.

27. PPGI through its counsel then further attempted to persuade NGCA counsel to cooperate in simply arranging for a mutually acceptable, mutually agreed neutral arbitrator, from other candidates on the AAA roster that both sides had already analyzed and ranked, or through some other agreeable process – before either side or the contested arbitrator invested any time or any money in a process that would certainly lead to a massive waste of resources either

(1) in immediate court contests, or

(2) in a post-award motion-to-vacate court application process, and re-arbitration de novo, if an immediate court contest were not available or definitive, and the contested arbitrator proceeded and later rendered an award against PPGI.

NGCA's counsel's response was to refuse any cooperation in selecting an undiputedly neutral arbitrator at the outset, and instead to cite controlling case law under the applicable Federal Arbitration Act ["FAA"] that no court contest was available *until <u>after</u> the <u>complete conclusion</u> of the contested arbitration*.

Renewed appeals by PPGI counsel to NGCA counsel that the prospect of such future economic waste be simply avoided at the outset by choosing another arbitrator from the thousands of qualified arbitrators available in the United States, before the contested arbitrator even began, and before both parties racked up massive attorney fees, AAA administrative fees, litigation fees, and arbitrator fees at $475/hour, were unavailing.

**PPGI'S MT. TO TRANSFER, STAY OR DISMISS NGCA'S PETITION TO CONFIRM ARB. AWARD [FRCP 12(b)(3)]**
11

PPGI, constrained by the provisions of the aforementioned FAA, and NGCA insistence on utilizing the contested arbitrator, had no choice but to proceed under a continuing objection with the contested arbitrator presiding.

28. At three subsequent junctures, PPGI renewed its continuing objection, with additional information, exhibits and disclosures from sources other than the arbitrator, but each time the AAA refused to honor the objection, and reaffirmed the arbitrator over objection and without any reasons given despite request for those reasons.

29. A final award was made 10/1/09 in Los Angeles, CA, and delivered 10/17/09 to PPGI counsel in Los Angeles, CA, denying all of PPGI's claims, and awarding $972,362.09 in attorney fees and costs against PPGI in favor of NCCA.

30. In making the award the arbitrator recognized and cited the relevant, central, clear and applicable law concerning the covenant of good faith and fair dealing inherent in all contracts under New York law, but disregarded that law and declined to make any finding as to PPGI's pivotal claim that NGCA, in league with its owning entities National Geographic Society (and its wholly-owned subsidiary National Geographic Television), did, as set forth in more detail in paragraph 5 above, and here excerpted with emphasis,

> "utilize the advertising time solely for its own purposes …. (In one year of its extensive broadcasting and its <u>self-advertising</u> of <u>its own brand and services</u>, NGCA sold not one penny of advertising; and just before the end of that first year of nationwide broadcasting and self-advertising, it used its purported "inability" to sell advertising to exercise a contractual right to exit the contract and its second-year automatic renewal obligation.  It immediately thereafter began nationwide *cable* broadcasting to its now-established nationwide customer-viewer base, and publicized its having obtained major advertising sponsorship for its cable venture.  NGCA had no documentation of any efforts to sell

advertising to any third parties.)"

31. Thus, PPGI asks the award be vacated

*(1)* for evident partiality of the arbitrator, or related improper and unfair process, under 9 USC 10(a)(1),(2), and/or (3);  or

*(2)* for manifest disregard of the law by the arbitrator, or related improper and unfair process under 9 USC 10(a)(3) and/or (4), or otherwise as permitted by law in the interest of a fair and full decision on the merits.

## **CONCLUSION**

THE ARBITRATION AWARD SHOULD BE TRANSFERRED TO THE U.S. DISTRICT COURT FOR CENTRAL CALIFORNIA, STAYED PENDING FINAL RESOLUTION OF THE MOTION TO VACATE PENDING IN THE U.S. DISTRICT COURT FOR CENTRAL CALIFORNIA, OR DISMISSED.

DATED: 10/28/09                         LAW OFFICES OF JOHN F. L. HEBB


                                        By:_____
                                        JOHN F. L. HEBB, Esq.
                                        Attorney for PPGI

---

\*\* "made in California", as indicated by the arbitrator immediately preceding his signature on both the interim and final arbitration awards [at Declaration of Matthew Solum, Esq. in NGCA's petition to confirm, Exhibits C and E]

**PPGI'S MT. TO TRANSFER, STAY OR DISMISS NGCA'S PETITION TO CONFIRM ARB. AWARD [FRCP 12(b)(3)]**
13

It is also noted that while the parties' arbitration clause called for arbitration in New York, only the testimonial arbitration hearing was held in New York.  All other 8 hearings (including 2 hearings after the testimonial arbitration hearing) were held by the California arbitrator in California, and were attended telephonically by PPGI's California counsel and NGCA's Chicago and New York counsel (and sometimes by NGCA's Washington, DC counsel).   Declaration of John F.L. Hebb, Esq.

**PPGI'S MT. TO TRANSFER, STAY OR DISMISS NGCA'S PETITION TO CONFIRM ARB. AWARD [FRCP 12(b)(3)]**
14

PROOF OF SERVICE
(CCP 1013a, 2015.5, et al.)

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am a resident of/employed in the aforesaid county, State of California; I am over the age of eighteen years and not a party to the within action; my business address is: PO Box 555, Topanga, CA 90290-0555.

On the below date, I served the foregoing

**PPGI'S MOTION TO TRANSFER, STAY OR DISMISS
NGCA'S PETITION TO CONFIRM ARBITRATION AWARD
[FRCP 12(b)(3); 28 USC 1404(a); FRCP 12(b)(1,(2); 9 USC Secs. 10, 12; inter alia]**

on the interested parties in this action by (unless otherwise specified below) placing a true copy

thereof in a sealed envelope with postage thereon fully prepaid, in the United States mail in Los

Angeles County, California, addressed as follows:

via US Mail [10/28/09], and to be emailed or faxed, to

Matthew Solum
KIRKLAND & ELLIS LLP
Citigroup Center, 153 East 53rd Street
New York, New York 10022-4675
212-446-6460 ms
212-446-4800 pbx
Facsimile: 212-446-4900
*msolum@kirkland.com*

I declare, under penalty of perjury under the laws of the State of New York and California, that the

foregoing is true and correct.

10/28/09
Date                                                                              Signature of Declarant

**PPGI'S MT. TO TRANSFER, STAY OR DISMISS NGCA'S PETITION TO CONFIRM ARB. AWARD [FRCP 12(b)(3)]**
15

LAW OFIFICES OF JOHN F.L. HEBB
SANTA MONICA, CALIFORNIA
310/455-0070